NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTINE M. DAVISON, | : | |
| | : | Civil Action No. 14-cv-04210 (SDW) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | September 2, 2015 |
| Defendant. | : | |

**WIGENTON**, District Judge.

Before this Court is Christine M. Davison's ("Plaintiff" or "Davison") appeal of the final administrative decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") with respect to Administrative Law Judge Donna A. Krappa's ("ALJ Krappa") decision finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act") and, therefore, not entitled to Disability Insurance Benefits ("DIB").

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b).

For the reasons discussed below, this Court **AFFIRMS** the Commissioner's decision.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*A. Personal and Employment History*

At the time of the administrative hearing on September 19, 2012, Plaintiff was twenty-four years old, single, had no children, and lived with her mother. (R. 36.) Plaintiff graduated from high school and was previously a cashier at ShopRite, a daycare worker, and a secretary at a doctor's office (R. 26.)  Plaintiff had a driver's license, but did not drive often. (*Id.*) Plaintiff weighed 242 pounds and was 5'3" tall. (*Id.*)

*B. Medical History*

In April 2007, Plaintiff was diagnosed with bipolar disorder. (R. 26.) In April 2009, Plaintiff stopped taking her medication. (*Id.*) On November 16, 2009, Plaintiff underwent a psychiatric evaluation at the University of Medicine and Dentistry of New Jersey ("UMDNJ") University Behavioral HealthCare. (R. 473-79.) Anu Upadhyay, M.D. ("Dr. Upadhyay"), diagnosed Plaintiff with bipolar disorder, morbid obesity, and episodic alcohol abuse. (R. 479.) Plaintiff was prescribed Abilify. (R. 477, 486.)

On November 24, 2009, Joleen Mcatee, L.C.S.W. ("Mcatee"), saw Plaintiff and noted that Plaintiff had been feeling better, had been taking her medication regularly, had not been as angry, had fewer mood swings, and was not depressed. (R. 495.) On November 30, 2009, Dr. Upadhyay saw Plaintiff and noted that Plaintiff had no side effects from the medication and was feeling better, but had not attended any group therapy. (R. 496.) On December 7, 2009, Mcatee saw Plaintiff again and reported that Plaintiff had a neutral mood and denied depression, mania, and psychosis. (R. 497.)

On December 14, 2009, Dr. Upadhyay saw Plaintiff for an emergency visit because Plaintiff was feeling anxious and jittery. (R. 498.) Plaintiff reported having not taken Abilify for

the last three days. (*Id.*) On December 15, 2009, Mcatee saw Plaintiff who reported feeling better, although she had not yet started taking her new medication. (R. 499.) On January 5, 2010, Mcatee saw Plaintiff who reported feeling well, complying with her medication, and having stable moods. (R. 500.) On January 19, 2010, Dr. Upadhyay saw Plaintiff and stated that Plaintiff was feeling well, made good eye contact, and had organized thoughts. (R. 501-502.) On April 5, 2011, Mcatee again reported that Plaintiff said she was doing well and that her mood was stable. (R. 525.) On May 4, 2011, Mcatee gave a similar report. (R. 527.) On June 1, 2011, Mcatee reported that Plaintiff's mood was normal, but Plaintiff also said that she had occasional outbursts of temper that resulted in her verbally fighting with her mother. (R. 529.)

On August 8, 2011, Mcatee saw Plaintiff because Plaintiff's mother was seeking treatment for Plaintiff. (R. 541-44.) Plaintiff reported that during two months of progressively worsening mood, she isolated herself in her room, heard a voice calling her name, and that the voice told her to kill herself and her mother. (R. 544.) During this period, she verbally threatened to kill her mother once, and she threatened to hit her mother with a glass vase. (R. 544.) On the same date, August 8, 2011, Plaintiff was admitted to UMDNJ Behavioral HealthCare. (R. 545.) Plaintiff was then discharged on August 15, 2011. (*Id.*) Treatment notes state that Plaintiff responded well to medications and had no complaints at the time of her discharge. (R. 551.) The notes also state that Plaintiff "stabilized with full remission of auditory hallucinations, with lessening of depressive symptoms that no longer interfer[e] with daily activities." (*Id.*) Plaintiff's discharge medications included Abilify and Cogentin. (R. 561.)

On June 20, 2012, Mcatee met with Plaintiff, who reported that "she ha[d] been feeling well with stable mood, no depression or mania." (R. 589.)

*C. Hearing Testimony*

On September 19, 2012, Plaintiff attended a hearing before ALJ Krappa. (R. 32.) Plaintiff testified to having a short attention span and to having mood swings. (R. 41.) Plaintiff said that she does not drive often because she does not have patience. (R. 42.) Plaintiff also said that she normally wakes up around 7:45 a.m., but often stays in bed until noon when she gets up and takes care of her cat and dog, showers, and watches television or goes on her computer. (R. 43.) Plaintiff then testified that she has friends with whom she goes to Dunkin Donuts to get coffee and to talk. (R. 46.) On the weekends, she sometimes goes out with her boyfriend to the movies or mall. (*Id.*) Plaintiff also stated that she collects food stamps. (R. 44.)

Regarding her moods, Plaintiff testified that she can be hyper for three or four days and can then be depressed for days at a time. (R. 49.) She described herself on the day of the hearing as having a low day. (*Id.*)

Plaintiff said she was 5'3" tall and weighed 242 pounds. (*Id.*) Plaintiff also said that she had gained approximately 55 pounds in the last four years. (R. 50.) Plaintiff testified that she had a torn ACL and torn meniscus in her left knee from a 2005 accident but that she never had surgery for it. (R. 50-51.) Plaintiff said she never used street drugs and never abused alcohol. (R. 51-52.) She said the last time she drank alcohol was probably when she was 21. (R. 52.)

Plaintiff testified that she had been taking Cogentin for one year and Abilify for three years. (R. 45.) Plaintiff said that Abilify was keeping her stable until her 2011 hospitalization, after which time Plaintiff started taking Cogentin as well. (*Id.*) Plaintiff said that at the time of her August 2011 hospitalization, she had been having suicidal thoughts, had been hearing voices, and was paranoid all the time. (R. 53.) Plaintiff could not talk to her mother about it, so she wrote her

mother a letter, and her mother took her to the doctor. (R. 54.) Plaintiff also stated that just before her hospitalization, she had stopped taking Abilify because she had been feeling good. (R. 59.) However, Plaintiff said that recently she had been feeling paranoid again as though someone were behind her or watching her. (R. 55.) Plaintiff said that at one point in the past she had threatened her mother with a knife but that she then dropped the knife. (R. 56.) Plaintiff also testified that her dad was verbally and physically abusive to her mother when Plaintiff was three years old and that she rarely sees him now. (R. 58-59.)

Plaintiff testified that she goes monthly to UMDNJ where she sees her psychiatrist, her therapist, and participates in group therapy. (R. 63.) Plaintiff stated that during group therapy, her mind often wanders. (R. 65.)

Plaintiff testified that she showers approximately every other day and has low days, or is depressed, about half of each month. (R. 66.) Plaintiff sometimes helps her mom around the house by cleaning, vacuuming, washing dishes, and straightening up. (R. 68.) Finally, Plaintiff said that she cannot cook but that she occasionally washes her laundry. (R. 68-69.)

ALJ Krappa then presented to a vocational expert a hypothetical individual with similar limitations to Plaintiff, including Plaintiff's age, educational background, and work history, as well as certain exertional limitations (for "medium work"), including the following: lifting 50 pounds occasionally, 25 pounds frequently; standing or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; unlimited pushing and pulling within the weight restriction; only occasional change in work setting during the workday; only occasional decision making; not working closer than three to five feet from others; and having no contact with the general public. (R. 70-71.) The vocational expert replied that a person with similar social and exertional limitations could perform the work of a hand packager, a cleaner, and an ingredient

5

scaler, which jobs exist in the aggregate of 1,300 in the northern central New Jersey and central New York region and in the aggregate of 35,000 nationally. (R. 71-72.)

### D. Procedural History

On December 29, 2010, Plaintiff filed an application for Social Security Income ("SSI"), alleging a disability onset date of June 29, 2008. (R. 20.) Plaintiff's application was denied on March 30, 2011. (R. 102-106.) On April 20, 2011, Plaintiff filed for reconsideration. (R. 108.) On September 13, 2011, Plaintiff's application was denied again. (R. 111-13) On November 7, 2011, Plaintiff requested a hearing before an ALJ. (R. 114-16.) On September 19, 2012, a hearing was held before ALJ Krappa. (R. 30-77.) During the hearing, Plaintiff moved to amend her alleged onset date to January 13, 2011, which ALJ Krappa granted. (*See* R. 20.) On January 30, 2013, ALJ Krappa issued her decision determining that Plaintiff is not disabled. (R. 20-29.) On July 2, 2014, Plaintiff filed her Complaint in this Court. (Dkt. No. 1.)

## LEGAL STANDARD

### A. Standard of Review

This Court has Jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's findings of fact if there exists substantial evidence to support the decision. *Id.*; *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla, [but] it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit

6

on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the administrative law judge's findings of fact so long as they are supported by substantial evidence. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargonli v. Halter*, 247 F.3d 34, 35 (3d Cir. 2001)).

## B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the administrative law judge ("ALJ") follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as

well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the

claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**DISCUSSION**

At step one of the disability analysis, ALJ Krappa found that Davison had not engaged in SGA since January 13, 2011. (R. 23.)

At step two, ALJ Krappa found that, under 20 C.F.R. 416.920(c), Davison has the severe impairments of affective disorders and obesity. (*Id.*) ALJ Krappa stated that Davison's impairments are severe because "the medical record supports a finding that they are medically determinable impairments which, when considered either individually or in unison, significantly limit the claimant's mental and physical abilities to do one or more basic work activities." (*Id.*) Also, ALJ Krappa found that Davison's severe impairments had lasted for a continuous period of more than twelve months. (*Id.*)

At step three, ALJ Krappa found that Davison's severe impairments do not meet or medically exceed the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926.) In making this determination, ALJ Krappa considered Plaintiff's mental impairment in light of Plaintiff's daily living activities; social functioning; concentration, persistence, and pace; and whether or not Plaintiff had suffered from any episodes of decompensation. (R. 24.) ALJ Krappa found that Plaintiff's mental impairment does not meet or medically equal the criteria of listing 12.04. (*Id.*) In making this determination, ALJ Krappa considered both the "paragraph B" and the "paragraph C" criteria. (*Id.*)

Under the "paragraph B" criteria, ALJ Krappa found that Plaintiff has mild restrictions in her activities of daily living. (*Id.*) ALJ Krappa cited Plaintiff's hearing testimony that Plaintiff cares for her dog and cat, showers, watches television, talks on the telephone, shops for groceries with her mother, meets friends for coffee, goes to the movies and for walks with her boyfriend, completes household chores, gets her nails done, has her own car, and goes shopping. (*Id.*) Plaintiff also testified that her medication prevents her from having mood swings. (*Id.*)

ALJ Krappa also found that Plaintiff has moderate difficulties in her social functioning. (*Id.*) ALJ Krappa said that, although Plaintiff's social circle is small, Plaintiff "[d]id not report any significant difficulties in maintaining her social relationships." (*Id.*)

ALJ Krappa also found that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace. (*Id.*) ALJ Krappa cited the same hearing testimony listed above as well as Plaintiff's ability at the hearing "to answer all questions asked of her in an appropriate and timely manner, thereby demonstrating a level of concentration in the arguably stressful setting of a disability hearing." (*Id.*)

Finally, under "paragraph B," ALJ Krappa found that Plaintiff had not experienced any episodes of decompensation for an extended duration. (*Id.*) In light of the above evidence, ALJ Krappa properly found that Plaintiff's mental impairment does not satisfy the "paragraph B" criteria. (*Id.*)

Under the "paragraph C" criteria, ALJ Krappa found that Plaintiff failed to establish any evidence that met any of the "paragraph C" requirements. (*Id.*)

Regarding Plaintiff's obesity, obesity is not a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. SSR 02-1p; *see also* 20 C.F.R. Pt. 404 Subpt. P, App. 1. Under Social Security Regulation 02-1p, adjudicators are merely to consider the potential effects obesity has on

11

certain body systems and the potential effects obesity has generally. SSR 02-1p. Since step three requires the ALJ to determine only whether a claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, an ALJ need not discuss obesity as a separate impairment. The position that obesity should have been addressed more specifically at step three by ALJ Krappa is insufficient to reverse her decision, given her findings and the hypothetical posed to the vocational expert. *See Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention [at step three] any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements.").

> Before undergoing a step-four analysis, ALJ Krappa found that Plaintiff has the RFC to
>
> perform the *exertional demands* of medium work as defined under the Regulations; specifically, she is able to: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight hour work day; sit for six hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Furthermore, as the *mental demands* of work, I find that the claimant is able to perform jobs: that are unskilled and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather than consistently throughout it); that require no work in close proximity to others (closer than 3-5 feet) to avoid distraction; that require only occasional contact with supervisors, and co-workers, but no contact with the general public.

(R. 25.) In making this determination, ALJ Krappa based her finding on the objective medical evidence in the record, which includes the opinions of the state-agency physicians who reviewed the file. (*Id.*) ALJ Krappa also considered Plaintiff's testimony. (R. 25-26.) ALJ Krappa extensively cited to much of the same objective medical evidence and Plaintiff's hearing testimony that are discussed in the "Factual Background" section above. (R. 26-27.) At step four, ALJ

Krappa found that Plaintiff has no past relevant work experience that qualifies under the regulations. (R. 27.)

Finally, at step five, ALJ Krappa determined that, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 28.) ALJ Krappa considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* citing SSRs 83-12, 83-14. 85-15.) ALJ Krappa cited to the vocational expert's testimony that there exists a significant number of jobs in the national and local economies that an individual similar to Plaintiff is capable of performing. (*Id.*) ALJ Krappa particularly identified the job of cleaner as one that Plaintiff could perform. (R. 29.) Because ALJ Krappa determined that Plaintiff is capable of performing work that exists in significant numbers in the national and local economies, Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. This Court finds that ALJ Krappa's determination is supported by substantial evidence in the record.

**CONCLUSION**

As this Court finds that ALJ Krappa's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties